## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EQUAL EMPLOYMENT              )
OPPORTUNITY COMMISSION,       )
       Plaintiff,              )
                               )
    and                       )
                               )
KIMBERLY A. BLOOM,            )
       Plaintiff-Intervenor,   )
                               )
    v.                        )    Civil Action No. 06-01210
                               )    Judge Nora Barry Fischer
ALDI, INC.,                   )
       Defendant.              )

## OPINION

The instant case involves the religious beliefs of an individual, who describes herself as "a Christian, Protestant, and a Born Again Christian," and who alleges that her former employer failed to accommodate her belief that it is a sin to work on the Sabbath or to ask another to work on the Sabbath, which, in accordance with her beliefs, falls on Sunday. Resulting therefrom, the Equal Employment Opportunity Commission ("EEOC") brought this action against Kimberly A. Bloom's former employer, Aldi, Incorporated ("Aldi"), for alleged discrimination in employment based on religion as well as retaliation, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a) ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. C.S.A. §§ 955 and 963(c) ("PHRA"). Before this Court for consideration is Aldi's Motion for Summary Judgment [38]. For the foregoing reasons, said motion is hereby denied in all respects.

## FACTUAL BACKGROUND

As the law requires at this stage, the Court resolves all disputed facts and draws all inferences therefrom in favor of Plaintiff. However, unless otherwise indicated, the facts are undisputed.

1

Bloom began working for Aldi's Uniontown location as a casual cashier on November 5, 1998. (Docket No. 40, at ¶ 4; Docket No. 50, at ¶ 4).[1] Aldi employs two types of cashiers- casual and permanent part-time. (Docket No. 56, at ¶ 51; Docket No. 60, at ¶ 51). Casual cashiers work less than twenty hours per week, while permanent part-time cashiers work more than twenty, but less than forty hours per week. (Docket No. 56, at ¶ 51; Docket No. 60, at ¶ 51). Additionally, casual cashiers are expected to work "as needed," meaning that, as a casual cashier, Bloom's schedule "fluctuated depending on how busy the store manager estimated the Uniontown store would be during that particular week." (Docket No. 40, at ¶ 7; Docket No, 50, at ¶ 7). At any particular time, Aldi stores, including the Uniontown location, are staffed with one or two cashiers. (Docket No. 40, at ¶ 3; Docket No. 50, at ¶ 3). Casual and part-time cashiers are responsible for essentially the same duties, including operating registers, cleaning, and stocking. (Docket No. 41, Exh. C, at 84; Docket No. 40, at ¶ 6).

At all times relevant to the instant litigation, Kelli Cooper was the manager of Aldi's Uniontown location. (Docket No. 49, at ¶ 24; Docket No. 55, at ¶ 55). Additionally, Pam Conn and Christy Shimko were employed as shift managers at Aldi's Uniontown location. (Docket No. 49, at ¶¶ 25-26; Docket No. 49, at ¶¶ 25-26). Theresa Salandra worked as Aldi's District Manager and supervised four Aldi locations in Pennsylvania and West Virginia. (Docket No. 49, at ¶ 21; Docket No. 55, at ¶ 21). As district manager, Salandra reported to Kim Anderson who, at all relevant times, was employed as Aldi's Director of Store Operations. As Director of Store Operations, Anderson

---

[1]
In 2001, Bloom's status changed to permanent part-time until 2002, when her status changed back to casual cashier. She remained a casual cashier from 2002 until her termination in 2006. (Docket No. 40, at ¶¶ 10-11; Docket No. 50, at ¶¶ 10-11).

oversaw operations at Aldi locations in Western Pennsylvania, Northern Ohio and New York. (Docket No. 49, at ¶¶ 22-23; Docket No. 55, at ¶¶ 22-23).

Beginning in the fall of 2005, Aldi stores began operating on Sundays. (Docket No. 40, at ¶ 24; Docket No. 50, at ¶ 24). Cooper informed Aldi Uniontown employees that, in order to cover the Sunday shifts, cashiers would rotate Sundays. (Docket No. 40, at ¶ 27; Docket No. 50, at ¶ 27). Specifically, Cooper informed Aldi Uniontown employees that each cashier would be required to work every seventh or eighth Sunday. (Docket No. 40, at ¶ 28; Docket No. 50, at ¶ 28).

Thereafter, in November of 2005, Bloom informed management at Aldi, specifically Salandra, that she was unable to work Sundays as a result of her religious beliefs.[2] (Docket No. 49, at ¶ 7; Docket No. 60, at ¶ 7). According to Bloom, during the course of this conversation, she explained her religious beliefs to Salandra, specifically regarding her belief that work on Sundays constituted a sin. (Docket No. 56, at ¶ 47). In response, Salandra informed Bloom that she would discuss Bloom's request to not work Sundays with her (Salandra's) managers. (Docket No. 40, at ¶ 47; Docket No. 50, at ¶ 47). Salandra subsequently discussed Bloom's request with her immediate supervisor, Kim Anderson. (Docket No. 40, at ¶ 49; Docket No. 50, at ¶ 49). Salandra met again with Bloom in January of 2006. (Docket No. 40, at ¶ 50; Docket No. 50, at ¶ 50). The parties dispute the contents of this conversation. *Id.* In the course of this conversation, Bloom again informed Salandra that she would be unable to work on Sundays because her religious convictions

---

[2]

Aldi admits that Bloom is a Born Again Christian. However, it disputes the sincerity of Bloom's religious beliefs. (Docket No. 60, at ¶ 1). Bloom, however, contends that she is a Christian and, as a result of her religious convictions refrains from any type of work as well as shopping and entertainment between the hours of midnight Saturday and midnight Sunday. (Docket No. 41, Exh. C, at 117). She further asserts that "[s]he does not make purchases on Sunday, because she does not support others working on Sunday." (Docket No. 49, at ¶ 54).

prohibited it. (Docket No. 41, Exh. L, at 37). Aldi contends that, during this conversation, Salandra informed Bloom that she would be required to work Sunday shifts as an "essential part of her job function." (Docket No. 40, at ¶ 50). Bloom contends that, during this meeting, Salandra informed Bloom that she was required to work Sundays, regardless of her religious convictions. (Docket No. 50, at ¶ 50). The parties agree, however, that during the course of Bloom's meeting with Salandra, Salandra offered to allow Bloom time off on Sunday mornings to attend to church or other observation, but that Bloom would not be permitted to never work on Sunday. (Docket No. 49, at ¶ 86; Docket No. 55, at ¶ 86).

Bloom also contends that subsequent to this meeting with Salandra, she informed Cooper, her immediate supervisor, that she would be unable to work on Sundays due to her religious beliefs and that neither Salandra nor Cooper ever addressed the matter with Bloom after these conversations. (Docket No. 49, at ¶¶ 76-77). Aldi denies that Bloom ever discussed with Cooper that Bloom could not work Sundays. (Docket No. 55, at ¶ 76). The parties agree, however, that Bloom was then scheduled to work Sunday, January 22, 2006. (Docket No. 49, at ¶ 77; Docket No. 55, at ¶ 77). Bloom alleges that on Friday, January 20, 2006, she visited Aldi in order to inform Shimko that she would not be working on Sunday. (Docket No. 49, at ¶ 88). Aldi contends that, while Bloom did discuss her Sunday shift with Shimko on January 20, Shimko did not take Bloom off the schedule because at that time Bloom had not properly "called off." (Docket No. 55, at ¶ 88). Bloom further alleges that she called Cooper on Saturday, January 21, 2006, to inform Cooper that Bloom would not be coming to work on January 22 because of her religious beliefs and that, on that same date, Aldi scheduled another cashier to work on Sunday. (Docket No. 49, at ¶ 89; Docket No. 50, at ¶ 72). Aldi denies that Cooper understood from this conversation that Bloom would not be reporting for

work on Sunday, January 22. (Docket No. 55, at ¶ 89). The parties agree that, on Sunday, January 22, Bloom did not report to work. (Docket No. 40, at ¶ 76; Docket No. 50, at ¶ 76).

On Monday, January 23, 2006, Salandra called Bloom in order to schedule a meeting with her on January 27 in order "to discuss [Bloom's] failure to work her scheduled Sunday shift." (Docket No. 40, at ¶79, Docket No. 50, at ¶ 79). At the January 27 meeting, Salandra informed Bloom that she was required to work Sundays as it "was an essential function of the job." Aldi suggests that during the course of this discussion, Bloom knew and understood that she had the option of "swapping" shifts with another cashier. (Docket No. 40, at ¶ 80; Docket No. 50, at ¶ 80). Thereafter, by letter dated January 31, 2006, Bloom informed Salandra that it violated her religious beliefs to work on Sunday and she requested that Aldi accommodate her request that she not be scheduled to work on Sundays. (Docket No. 51, Exh. 18). In the letter, Bloom suggests possible accommodations, including that instead of Sundays, she be scheduled to work holidays or other days of the week. *Id.*

Bloom was then scheduled to work on Sunday, February 5, 2006. (Docket No. 56, at ¶ 10; Docket No. 60, at ¶ 10). On Saturday, February 4, 2006, Bloom called Cooper to inform her that Bloom did not intend to show up for work on Sunday, February 5. (Docket No. 40, at ¶ 84; Docket No. 50, at ¶ 85).[3] The parties dispute whether Cooper understood that Bloom had called off in conformity with Aldi's policies. Bloom contends that Aldi understood that Bloom had "called off." (Docket No. 50, at ¶ 85). However, Aldi contends that Cooper did not understand, at the end of her

---

[3] The nature of these conversations between Bloom and Cooper are largely in dispute. Bloom contends that Cooper made several requests that Bloom reconsider her position regarding Sundays, including appeals to Bloom's religious beliefs. (*See* Docket No. 50, Exh. 2).

conversation with Bloom, whether or not Bloom would be showing up for work on February 5 and concluded that Bloom had not properly "called off." (Docket No. 40, at ¶¶ 87-88). The parties do not dispute that Bloom did not work on Sunday, February 5. (Docket No. 40, at ¶ 89; Docket No. 50, at ¶ 89).

On February 7, 2006, Bloom met with Salandra and Cooper, who, in the course of this meeting, terminated Bloom's employment. (Docket No. 40, at ¶ 91; Docket No. 50, at ¶ 91). Aldi contends that Bloom was terminated for failure to perform an "essential job function." (Docket No. 40, at ¶ 91). Bloom, however, contends that Aldi did not terminate her based upon her failure to perform an essential job function, as evidenced by the record. (Docket No. 50, at ¶ 91).

## PROCEDURAL BACKGROUND

On September 11, 2006, the EEOC commenced the instant action by filing a Complaint (with jury demand) against Aldi pursuant to Title VII of the Civil Rights Act of 1964 and Title I of the of the Civil Rights Act of 1991 in order "to correct unlawful employment on the basis of religion and to provide appropriate relief to Kimberly A. Bloom who was adversely affected by such practices." (Docket No. 1). On September 15, 2006, Kimberly A. Bloom filed a Motion to Intervene as of Right, which the Court granted on October 16, 2006. On October 13, 2006, Defendant Aldi filed its Answer. On October 17, 2006, Bloom filed her Complaint in Intervention, in which she joined Plaintiff EEOC in seeking legal and equitable relief and also asserted her own claims for religious discrimination and retaliation pursuant to Title VII, 42 U.S.C. §§ 2000e-2(a)(1) & 2000e-3(a), respectively. On November 15, 2006, Defendant Aldi filed its Answer to Complaint in Intervention.

On March 28, 2007, Bloom filed an Amended Complaint in Intervention, in which, based on the same set of facts, she added a third count for religious discrimination and retaliation in

violation of the PHRA.  On the same day, Defendant Aldi filed Defendant Aldi, Inc.'s Answer to Plaintiff-Intervenor Kimberly Bloom's Amended Complaint in Intervention.

On April 6, 2007, the instant matter was reassigned to the undersigned Judge.  On June 20, 2007, the Court held a status/settlement conference, at which the parties agreed to proceed to mediation before one of the Magistrate Judges.  Accordingly, on June 25, 2007, the Court issued an Order referring the instant matter to Magistrate Judge Lisa Pupo Lenihan for the purposes of mediation during the week of August 20, 2007.  On August 23, 2007, the parties mediated this case before Magistrate Judge Lenihan, but the case did not settle.

Concurrently, on June 25, 2007, Defendant filed the instant motion for summary judgment (Docket No. 38) ("Defendant's motion").  On July 26, 2007, Bloom filed her Plaintiff-Intervenor's Brief in Opposition to Defendant's Motion for Summary Judgment.  (Docket No. 53).  The EEOC filed its Plaintiff EEOC's Response Brief in Opposition to Defendant's Motion for Summary Judgment on August 15, 2007.  (Docket No. 57).  One week later, Defendant filed Defendant Aldi, Inc.'s Reply to Oppositions to Motion for Summary Judgment on August 22, 2007.[4]  (Docket No. 62) ("Defendant's reply").  Subsequently, on November 29, 2007, Defendant filed Defendant Aldi, Inc.'s Notice of Supplemental Authority in Support of Motion for Summary Judgment (Docket No. 64) ("Defendant's Notice").  On December 4, 2007, Bloom filed her Plaintiff-Intervenor's Response to Defendant's Notice of Supplemental Authority in Support of its Motion for Summary Judgment (Docket No. 65) and on December 7, 2007, the EEOC filed Plaintiff EEOC's Response in

_____

[4]

Aldi originally filed its reply on August 21, 2006 at Docket No. 61, however, the Clerk of the Court's Office issued a quality control message and Aldi subsequently refiled its reply as an errata on August 22, 2007 at Docket No. 62.

Opposition to Defendant's Notice of Supplemental Authority in Support of its Motion for Summary Judgment (Docket No. 66).

Needless to say, the instant motion is fully briefed and ripe for disposition.

## STANDARD OF REVIEW

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In evaluating the evidence, the Court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the nonmovant's burden of proof at trial. *Celotex*, 477 U.S. at 322-323. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions,

admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## ANALYSIS

In its motion, Defendant requests summary judgment as to all Plaintiff's counts, i.e., her religious discrimination claim as well as her retaliation claim under both Title VII and the PHRA. First, as to her religious discrimination claim, Aldi argues that her claim for failure to accommodate her religious belief fails because (1) Aldi offered Bloom two reasonable accommodations which she unreasonably refused; (2) Bloom's request for exemption from working all Sundays imposed an undue hardship on Aldi; and (3) Bloom's desire not to work on all Sundays was a personal preference as opposed to a sincerely-held religious belief.[5] Second, as to her retaliation claim, Aldi argues that Bloom cannot show that her termination was discriminatory or retaliatory "given the undisputed fact that she was terminated for legitimate and non-discriminatory reason that she failed to work two Sunday shifts for which she was scheduled." (Docket No. 38, at 2). Third and finally, Aldi argues that Bloom cannot recover punitive damages in light of its anti-discrimination policies and training program. The Court will address Defendant's arguments in turn.

A.      **Religious discrimination claim (failure to accommodate)**

Title VII and the PHRA make it illegal for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment on the basis of

---

[5]

The Court notes that Defendant Aldi presented and argued said arguments out of order, addressing the *prima facie* case last. In accordance with the case law and burden shifting analysis, the Court will address the *prima facie* case at the outset.

religion.  *See* 42 U.S.C. § 2000e-2(a); 43 Pa. C.S.A. § 955(a).  The two acts are substantially similar, and Pennsylvania courts generally interpret the PHRA consistent with Title VII.  *See Weston v. Commonwealth of Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir.2001) ("The proper analysis under Title VII and the [PHRA] is identical as Pennsylvania courts have construed the two acts interchangeably").  Accordingly, the Court will analyze Plaintiff's religious discrimination claims under Title VII and the PHRA together.

Under Title VII, employees may assert two different theories of religious discrimination: disparate treatment and failure to accommodate.  *See Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 281 (3d Cir.2001).  Here, neither Plaintiff EEOC nor Plaintiff-Intervenor Bloom have alleged disparate treatment but only a failure to accommodate on behalf of Aldi, and thus, the Court will consider the EEOC's and Bloom's claims under this latter theory.

1.     *Prima facie* case

To establish a *prima facie* case for failure to reasonably accommodate religious beliefs or practices, an employee must show that she: (1) holds a sincere religious belief that conflicts with a job requirement; (2) informed her employer of the conflict; and (3) was disciplined for failing to comply with the conflicting requirement.  *Shelton v. University of Medicine & Dentistry of New Jersey*, 223 F.3d 220, 224 (3d Cir. 2000).  Here, Defendant Aldi challenges the first element of Plaintiff's *prima facie* case, but apparently concedes the second and third prongs.[6]

---

[6]

However, in its reply brief, Aldi appears to raise a challenge to the second prong to the degree that it asserts, for the first time, that "Bloom never told Aldi that her beliefs prevented her from seeking swaps ... ." (Defendant's reply at 3-4).  Because Aldi conceded this element in its opening brief and only challenges it in its reply brief, the Court finds that Aldi waived any challenge to the second prong for purposes of summary judgment.  *See also infra*, note 18.

Defendant Aldi argues that "Bloom has not shown that her desire to spend Sundays with family was a sincere religious belief as opposed to merely a personal preference." (Docket No. 39, at 11). In response, the EEOC asserts that genuine issues of material fact preclude summary judgment as the sincerity of Bloom's religious belief insofar as she has observed Sunday as the Sabbath for an extended period of time and she has consistently declined to work thereon. (Docket No. 57, at 7-8). Bloom essentially asserts the same in her response.

While Defendant does not specifically articulate as much, the Court reads Defendant's argument as challenging both the sincerity of Bloom's belief, (*see* Docket No. 39, at 12) (asserting that, before Aldi was open on Sundays, Bloom previously requested not to work on Saturdays because she wanted to spend time with family), and whether her belief constitutes a "religious belief," (*see* Docket No. 39, at 12) (asserting that Bloom does not attend church on Sundays, but spends time with her family, reads the Bible, and watches a preacher on television). *See Bushouse v. Local Union 2209, United Automobile, Aerospace & Agricultural Implement Workers of America*, 164 F.Supp.2d 1066, 1076 (N.D. Ind. 2001) ("Given the purpose of the protections and special accommodations afforded by Title VII, the court concludes that Title VII does permit an inquiry into the sincerity and religious nature of an employee or member's purported beliefs before the duty to accommodate such a belief arises"). Thus, the Court will address both arguments.

First, as to sincerity, few courts have spoken to this issue directly. "While the 'truth' of a belief is not open to question, there remains the significant question of whether it is 'truly held.' " *Sidelinger v. Harbor Creek School Dist.*, No. CIV 02-62 ERIE, 2006 WL 3455073, at *11(W.D. Pa. Nov. 29, 2006) (citing *United States v. Seegar*, 380 U.S. 163, 185 (1965)). In *Seegar*, the Court framed the "truly held" nature of the belief at issue as "the threshold question of sincerity which must

be resolved in every case." *Seegar*, 380 U.S. at 185. "The burden is on the plaintiff to show that [s]he holds a sincere religious belief in conflict with h[er] employer's requirements. *Sidelinger v. Harbor Creek School Dist.*, 2006 WL 3455073, at *11 (citations omitted).

In the Court's estimation, the sincerity of Plaintiff's belief that it is a sin to work on Sundays turns on the fact-finder's determination of her credibility. *See Sidelinger*, 2006 WL 3455073, at *11 ("The finding [as to the sincerity and religious nature of a plaintiff's purported beliefs] generally will depend on the factfinder's assessment of the employee's credibility") (citations omitted). Further, Plaintiff testified in great depth during her deposition about her religious beliefs, including the fact that she has been a Protestant her whole life, (*see* Bloom Deposition at 26:24-27:1), and that she observed Sunday as the Sabbath since at least when she began her position at Aldi on or about November 5, 1998, (*see* Bloom Affidavit at ¶2) ("During my initial interview, I informed Aldi that it was against my religion to work on Sundays").[7] Hence, at this stage, the Court finds that Plaintiff's testimony and Affidavit regarding her beliefs are sufficient to establish a *prima facie* case and create a question for the jury as to the validity and sincerity of her religious beliefs.

Second, as to the religious nature of her beliefs, section 2000e(j) defines religion as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). In *Frazee v. Illinois Dept. of Employment Sec.*, 489 U.S. 829 (1989), the Supreme Court held that a plaintiff's "sincerely-held belief" that he should not work on "the Lord's Day" entitled him to protection of the Free Exercise Clause of the First Amendment despite his nonmembership in any religious sect.

_____

[7]
Further, by the testimony of its employees, Aldi did not appear to question Plaintiff's sincerity at the time she communicated her beliefs to Ms. Salandra. (*See* Salandra Deposition, at 54:12-20).

Here, Plaintiff, a Protestant, has established that she sincerely believes that it a sin to work on the Sabbath or to "support" another person working on Sundays. Hence, her decision not to attend church on the Sabbath is immaterial as to whether her beliefs qualify as religious for purposes of Title VII. Furthermore, legislative history reveals that the 1972 Amendment to Title VII defining religion as it currently appears in the statute, *see infra*, sought (among other objectives) to protect Sabbatarians. *See* 118 Cong. Rec. 705-713 (1972).

Accordingly, the Court finds that the Plaintiff has met her burden by establishing a *prima facie* case of religious discrimination.

2.      *Reasonable accommodations and undue hardship*

If the employee establishes a *prima facie* case, which she has done here, the burden shifts to the employer to demonstrate that it made a good faith effort to accommodate the employee's religion or that the requested accommodation would work an undue hardship on the employer. *Shelton*, 223 F.3d at 224.[8]

In 1972, Congress amended Title VII to read as follows:

> The term religion includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship

---

[8] The Court is cognizant of the fact "that the Supreme Court has declined to accept or reject any particular prima facie case or burden-shifting approach to Title VII religious accommodation cases." *Shelton*, 223 F.3d at 225 (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 67 (1986)). Nevertheless, the Third Circuit has made clear that "absent further guidance from the Supreme Court, we will continue to apply the prima facie test and burden-shifting approach used in *Protos [v. Volkswagen of Am., Inc.*, 797 F.2d 129, 133-34 (3d Cir. 1986)] and *Getz [v. Pennsylvania*, 802 F.2d 72, 73 (3d Cir. 1986)]." Because the Court has located no "further guidance" from the Supreme Court or the Third Circuit since *Shelton*, the Court will analyze Plaintiff's failure to accommodate claim in accordance with the prima facie test and burden-shifting analysis.

on the conduct of the employer's business.

42 U.S.C. § 2000e(j). "The intent and effect of this definition was to make it an unlawful employment practice ... for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines v. Hardison*, 432 U.S. 63, 74 (1977). Here, Aldi asserts that (1) it offered two reasonable accommodations that Bloom rejected and (2) Plaintiff's request to be excused from Sunday work would have imposed an undue hardship on it. (Docket No. 39, at 2). The Court will first address the reasonableness of Aldi's accommodations and then turn to undue hardship.

a. *Reasonable accommodations*

Title VII does not define what constitutes a "reasonable accommodation." The seminal case addressing a "reasonable accommodation" is *Trans World Airlines v. Hardison*, in which the Court addressed the "the extent of the employer's obligation under Title VII to accommodate an employee whose religious beliefs prohibit him from working on Saturdays." *Id.* at 66. There, the employee, a clerk in the Store Department of Trans World Airlines ("TWA"), a large maintenance and overhaul base, studied the religion known as the "Worldwide Church of God," of which one of the tenets included that "one must observe the Sabbath by refraining from performing any work from sunset on Friday until sunset on Saturday." *Id.* at 67. After a temporary solution failed as a result of the employee's transfer to another building, the employee was asked to work on a Saturday when another employee went on vacation. When the parties (employee, employer, and the union) could not reach an accommodation, the employee refused to report for work on Saturdays, and after holding a hearing, the employer discharged Hardison "on grounds of insubordination for refusing to work during his designated shift." *Id.* at 69.

The employee filed a lawsuit against the company and the union alleging that his discharge constituted religious discrimination in violation of Title VII.[9]  After a bench trial, the district court found in favor of the defendants (employer and union), finding that the employer satisfied its "reasonable accommodations" obligation and any further accommodation would have imposed an undue hardship on the company.  On appeal, the appellate court reversed, holding that the company had not satisfied its duty to accommodate.  The Supreme Court accepted certiorari and concluded that the employer's conduct did not violate Title VII.  In doing so, the Court initially noted that "the statute [i.e., 42 U.S.C. § 2000e(j)] provides no guidance for determining the degree of accommodation that is required of an employer." *Id.* at 74.[10]  Nevertheless, even in the absence of such guidance, the Court proceeded to consider the reasonableness of the employer's accommodations, ultimately concluding that TWA made reasonable efforts to accommodate the employee by way of the collective bargaining agreement and seniority system, and that each of the suggested alternatives would have worked an undue hardship on it.  *Id.* at 77.

---

[9]

While Hardison also alleged a separate charge against the union, this cause of action was not before the Supreme Court and is not relevant here.

[10]

In fact, before turning to the specific accommodations at issue there and whether the same qualified as "reasonable" under the statute, the Court noted the lack of any standard to apply in conducting said analysis:

> In brief, the employer's statutory obligations to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship, is clear, but the reach of that obligation has never been spelled out by Congress or by EEOC guidelines.

*Hardison*, 432 U.S. at 75.

15

Shortly after *Hardison*, the Supreme Court once again attempted to explain a "reasonable accommodation," this time by defining what is not required. In *Ansonia Bd. of Educ. v. Philbrook*, in rejecting the appellate court's finding that "Title VII requires the employer to accept the proposal the employee prefers unless that accommodation causes undue hardship on the employer's conduct of his business," *Id.* at 66 (quoting 757 F.2d 476, 484 (1985)), the Court found "no basis in either the statute or legislative history for requiring an employer to choose any particular reasonable accommodation," *id.* at 68. Rather, the Court held (somewhat uneventfully) that "an employer has met its obligation under [Title VII] when it demonstrates that it has offered a reasonable accommodation to the employee," *id.* at 69, and the "employer need not further show that each of the employee's alternative accommodations would result in undue hardship," *id.* at 68-69.

Aldi contends that it offered Bloom two reasonable accommodations, which she unreasonably rejected: (1) a neutral rotating system coupled with voluntary swapping of shifts and (2) the offer of time off for Sunday religious services. With the above context in mind, the Court now turns to the purported "reasonable accommodations."

i.     *Rotation system and shift swapping*

First, Aldi asserts that its neutral rotation system coupled with its allowance of voluntary swapping of shifts constitutes a "reasonable accommodation" under Title VII. Specifically, after Aldi announced that its stores would now be open on Sundays in the fall of 2005, the manager in the Uniontown store instituted a neutral rotation system in which all seven cashiers would rotate working on Sundays, thus requiring each cashier to work every seventh or eighth Sunday. In conjunction with this system, Aldi points to its policy of allowing voluntary trading of shifts by employees within certain operational parameters, known as swapping.

16

At the outset, the Court wishes to make clear that Aldi relies on its pre-existing rotation system and voluntary shift swap policy as a reasonable accommodation for purposes of Title VII. (*See* Defendant's Motion at 4) (asserting that its "neutral rotation of all cashiers on Sundays, coupled with its policy of allowing employees to voluntarily swap shifts, was a reasonable accommodation as a matter of law"). This broad assertion inspires two responses from the Court.

First, to the extent that Aldi encourages the Court to adopt a *per se* rule as to its rotation system and voluntary shift swap policy as a "reasonable accommodation," the Court declines to do so. The Court thinks that the very nature of the inquiry on a failure to accommodate claim under Title VII does not lend itself to the application of a hard and fast rule, i.e., a rotation system and shift swap policy constitutes a "reasonable accommodation" as a matter of law, as seemingly proposed by Defendant Aldi. *See Smith v. Pyro Mining Company*, 827 F.2d 1081, 1085 (6th Cir. 1987) ("The reasonableness of an employer's attempt at accommodation cannot be determined in a vacuum. Instead, it must be determined on a case-by-case basis; what may be a reasonable accommodation for one employee may not be reasonable for another"); *Redmond v. GAF Corp.*, 574 F.2d 897, 902-03 (7th Cir.1978) ("The term 'reasonable accommodation' is a relative term and cannot be given a hard and fast meaning. Each case involving such a determination necessarily depends upon its own facts and circumstances, and comes down to a determination of 'reasonableness' under the unique circumstances of the individual employer-employee relationship. The trier of fact is in the best position to weigh these considerations"); *United States v. City of Albuquerque*, 545 F.2d 110, 114 (10th Cir. 1976) ("Each case necessarily depends upon its own facts and circumstances, and in a sense every case boils down to a determination as to whether the employer has acted reasonably"). As these courts teach, a court must look at each of set of facts anew. Nevertheless, the Court does

not foreclose the notion that a pre-existing neutral rotation system along with a voluntary shift swap policy *may* constitute a reasonable accommodation under Title VII under certain circumstances.

Second, in the Court's estimation, the plain language of Title VII requires an employer to make a reasonable accommodation in response to an employee's religious beliefs in conflict with his or her employment requirements. *See* Black's Law Dictionary at 584 (2d pocket ed. 2001) (defining reasonable accommodation as "an action taken to adapt or adjust for an employee's religious need or practice, done in way that does not impose an undue hardship on the employer"). This interpretation of an employer's duty to accommodate is bolstered by the EEOC Guidelines: "*After* an employee or prospective employee notifies the employer or labor organization of his or her need for a religious accommodation, the employer or labor organization has an obligation to reasonably accommodate the individual's religious practices." 29 C.F.R. § 1605.2(c)(1) (emphasis added). The word "[a]fter" implies a temporal component to an employer's duty to accommodate requiring the employer to respond with a good faith effort to the employee's need for a religious accommodation as opposed to merely relying on a system or policy. All the same, the Court declines to dwell on the extent of an employer's obligation because here Aldi did not offer an accommodation to Bloom in that it merely relied on its pre-existing system and policy. In other words, Aldi did not react to Bloom's religious beliefs. While the Court declines to hold as a *per se* rule that employer must react or take action in response to an employee's religious beliefs in order to meet its burden under Title VII, the Court finds that, at a minimum, an employer's failure to do the same may factor into a court's reasonableness analysis--and it does here.

Speaking to this very issue, i.e., voluntary substitutes and "swaps," the EEOC "Guidelines on Discrimination Because of Religion" provide that "the obligation to accommodate requires that

employers and labor organizations *facilitate* the securing of a voluntary substitute with substantially similar qualifications." 29 C.F.R. § 1605.2(d)(1)(i) (emphasis added). The Guidelines go on to provide examples for employers to consider:

> to publicize policies regarding accommodation and voluntary substitution; to promote an atmosphere in which such substitutions are favorably regarded; to provide a central file, bulletin board or other means for matching voluntary substitutes with positions for which substitutes are needed.

29 C.F.R. § 1605.2(d)(1)(i). In *Albemarle Paper v. Moody*, 422 U.S. 405 (1975), the Supreme Court commented on the significance of the EEOC guidelines:

> The EEOC Guidelines are not administrative regulations promulgated pursuant to formal procedures established by the Congress. But, as this Court has heretofore noted, they do constitute the administrative interpretation of the Act by the enforcing agency, and consequently they are entitled to great deference.

*Id.* at 431 (citations, internal quotations, and alteration omitted). *See also Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 784 n.3 (3d Cir. 1998) (quoting *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 937 (3d Cir. 1997) (noting that EEOC Guidelines in the context of the American with Disabilities Act are afforded "a great deal of deference")). Hence, the Court will give the EEOC Guidelines their due deference.

Here, the record evidence reveals that Aldi did not take any action regarding its rotation system and voluntary shift swap policy such as publicizing or promoting their policy or otherwise providing means for employees to effectuate a shift swap. *See EEOC v. Ithaca Industries, Inc.*, 849 F.2d 116, 119 (4th Cir. 1988) (noting that the employer "made no effort to accommodate [the employee] by any of the methods suggested by the guidelines in the regulations"). By its own admission, Ms. Salandra personally responded to Bloom's request for a religious accommodation

in the following manner: (1) after the meeting in November of 2005, at which the Plaintiff informed Salandra that she did not want to work on Sundays, "Salandra indicated that she would speak to her managers further about Ms. Bloom's position that she did not want to work on Sundays," (Docket No. 40 at ¶47); and (2) at the January 12, 2006 meeting, Salandra informed Bloom that she "would need to work on scheduled Sundays, and that working on Sundays was an essential function of the job," (Docket No. 40 at ¶50). Suffice to say, neither response comes close to a "reasonable accommodation." What is more, Aldi presents no evidence that it took any steps to "facilitate" let alone even engage in a discussion with Bloom as to the existing rotation system and voluntary shift swap policy. In point of fact, Aldi admits that it did not even "specifically suggest" the possibility of swapping shifts during the January 12, 2006 meeting between Bloom and Salandra. (*See* Docket No. 60, at ¶33). Likewise, in response to questions regarding their actions to accommodate the Plaintiff, specifically whether Aldi "suggest[ed]" to Plaintiff that she swap her Sunday shifts, Salandra merely responded that Plaintiff knew of the policies because she had previously swapped shifts "a million times." **(**Salandra Deposition at 64:9-19). The Court finds that Aldi's mere reliance on its pre-existing policy without any further action or process in response to Plaintiff's religious beliefs is not sufficient to constitute a "reasonable accommodation" under the presented facts.

In support of its argument that the neutral rotation system coupled with the voluntarily swap shifts constitutes a "reasonable accommodation," Aldi provides string citations to numerous cases regarding failure to accommodate claims where the employee's religious conflict involved work on the Sabbath. (*See* Defendant's Motion at 4-5). Aldi presumably offers said cases in support of the proposition that some sort of existing policy of scheduling/rotation shifts along with shift swaps constitutes a "reasonable accommodation." However, a closer look at said cases reveals that the

employers in those cases did not merely rely on their existing policies but rather took other action towards an accommodation, which the court factored into its analysis, in addition to the respective existing policy. *See United States v. City of Albuquerque*, 545 F.2d 110, 113 (10th Cir. 1975) (noting that, among other accommodations provided to employee, there was a "discussion back and forth between [employee] and [employer], with the latter urging [employee] to reconsider and try to work it out within the rules and regulations of the department" and the employee was "constantly urged by his supervisors to 'work it out' within the existing rules of the department"); *Beadle v. Hillsborough*, 29 F.3d 589, 593 (11th Cir. 1994) (providing that "[a]lthough the Department made provisions for [employee] to announce his need for shift swaps during roll call and to advertise his need for swaps on the Department's bulletin board, [employee] did neither of these")[11]; *Miller v. Drennon*, 966 F.2d 1443, 1992 WL 137578, at *3 (4th Cir. 1992) (per curiam) (not precedential) (finding that, among other accommodations provided, the employer "allowed [employee] to swap shifts with other [employees] and gave him the telephone numbers of his co-workers to aid [plaintiff] in obtaining swaps, and it also allowed him to apply for personal leave to avoid an objectionable

---

[11]

In point of fact, the Eleventh Circuit in *Beadle* spoke to the Court's concern here:

Moreover, the facts before us indicate that the Sheriff's Department *did more than simply rely on its neutral rotating shift system to accommodate Beadle's religious practices*. For example, it is undisputed that the Department allowed Beadle to arrange shift swaps with his co-workers. To aid Beadle in arranging these swaps, the Department provided him with an employee roster sheet which included all his co-worker's schedules. The Department also allowed Beadle to advertise his need for shift swaps during daily roll calls and on the Department's bulletin board.

*Beadle*, 29 F.3d at 593 (emphasis added).

assignment")[12]; *EEOC v. Wise,* 2006 U.S. Dist. Lexis 65438, at *15-16 (W.D.N.C. Sept. 13, 2006)

(holding that the employer's "pre-existing policies of a seniority system, unpaid leave program, shift-

swapping and floating holidays *combine* to constitute reasonable accommodations, even though the

conflict was not eliminated") (emphasis added)[13]; *Williams v. Dr. Francis Harvey*, Civil Action No.

4:05cv161, 2006 U.S. Dist. LEXIS 62249, at *39-41 (E.D. Va. Aug. 21, 2006) (providing that, after

employee expressed her dislike of her new schedule, "management and the union met with plaintiff

and offered to accommodate her by allowing her to change shifts 'to either a swing shift or a

midnight shift that would be able to accommodate Sundays off;' however, plaintiff declined the offer

to change shifts") (citation omitted).[14]  Accordingly, considering that the employers in the cases

relied upon by Aldi either (1) took some action in furtherance of its offered accommodation beyond

sole dependence on an existing policy, and/or (2) provided additional accommodations, the Court

---

[12]

The Court notes that the *Miller* case is an "unpublished opinion" issued before January 1, 2007 and, therefore, pursuant to Local Rule 32.1 of the U.S. Court of Appeals for the Fourth Circuit, entitled "Citation to Unpublished Dispositions," citation to the same is "disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case," none of which apply here.  U.S. Ct. of App. 4th Cir. Rule 32.1.  However, while Rule 32.1 allows citation to an unpublished disposition issued prior to January 1, 2007 when certain requirements have been met, Defendant has not established let alone argued as much.

[13]

Further, the Court in *Wise* addressed each accommodation individually.  Pertinent here, the *Wise* Court opined that "allowance of shift swapping *can* constitute a reasonable accommodation." *Wise,* 2006 U.S. Dist. Lexis 65438, at *12.  The Court does not disagree, rather the facts presented here do not support such a finding.

[14]

In *Williams*, it is unclear whether the Court held that the employer's "policy in place which permitted plaintiff to switch shifts with other employees as long as the change would not result in overtime" constituted a "reasonable accommodation" separate and distinct from the employer's later actions described above.  Nonetheless, to the extent that it so held, the Court finds that *Williams* is also distinguishable from the instant matter in terms of the religious beliefs at issue, i.e., the employee in *Williams* believed it was a sin to work on Sundays but not that it was a sin to ask others to work on Sundays, as is the case here.

finds Defendant's reliance on the same to be misplaced in that Aldi has neither demonstrated nor even alleged any action in addition to its rotation system and swap shift policy here.

In the same vein, in its notice of supplemental authority,[15] Defendant Aldi directs the Court's attention to *Morrisette-Brown v. Mobile Infirmary Medical Center*, 506 F.3d 1317, 1322 (11th Cir. 2007), in which the U.S. Court of Appeals for the Eleventh Circuit, applying a clear error standard, affirmed the district court's finding (after a bench trial) that the defendant-employer reasonably accommodated the religious beliefs of the plaintiff-employee that prevented her from working on Fridays. *Id.* at 1324. Isolating one sentence therein, Aldi apparently contends that a neutral rotating shift system standing alone may satisfy the requirements of Title VII. (Defendant's Notice at 2). However, the Court did not merely rely on the shift system, but rather the Court considered the following: (1) "a seemingly neutral rotation system"; (2) the approval of all of plaintiff's requests for shift swaps with respect to her Saturday shifts and instruction to her on numerous occasions to find someone with whom to swap her Friday night shifts; and (3) the posting of a master schedule of all employees' schedules, which plaintiff "could have used ... to find someone with whom to swap her scheduled Friday shifts."[16] *Id.* at 1323. However here, Aldi's conduct falls short of that of the Mobile Infirmary Medical Center in that no one from Aldi provided the Plaintiff with any instruction regarding shift swaps and there is no evidence in the record that Aldi posted a schedule of all the

---

[15]

Actually, Aldi first directed the Court to the district court opinion in *Morrisette-Brown v. Mobile Infirmary Medical Center*, 2006 U.S. Dist. LEXIS 51723, at *1 (S.D. Ala. 2006), in its original motion.

[16]

In addition, the Court also noted that the employer made other accommodations, such as encouraging the plaintiff to transfer to another position and asking the plaintiff to review "the open-positions list" and offering to process her requests and secure interviews for the position. *Morrisette-Brown*, 506 F.3d at 1324.

employees' shifts.  Further, Aldi goes on to point out that the Court in *Morrissette-Brown* found the employer's steps sufficient for purposes of Title VII "despite the fact that Mobile Infirmary did not actively assist in coordinating *other* shift arrangements." *Id.* at 1323 (emphasis added).  Plainly, this statement implies that Mobile Infirmary Medical Center assisted in coordinating *some* shift arrangements (e.g., "instruct[ing] her on numerous occasions to find someone with whom to swap her Friday night shifts"), but that the employer had no duty to do more.  The Court does not *per se* disagree, however Aldi took no similar action.  As such, the Court finds that case inapposite.

The Court's view of "reasonable accommodation" finds support in *Kenner v. Domtar Industries, Inc.*, No. 04-CV-4021, 2006 WL 662466 (W.D. Ark. March 13, 2006), in which the Court disagreed with the employer's argument that the "existence of a shift swap system in a collective bargaining agreement can establish a reasonable accommodation as a matter of law":

> Title VII's reasonable accommodation provisions contemplate an *interactive process*, with cooperation between the employer and the employee, *but which must be initiated by the employer*.  In this case, there is no evidence before the Court that [the employer] initiated this process, only that a shift-swap system was in existence.

*Kenner*, 2006 WL 662466, at *1 (emphases added).  *See also Ithaca Industries*, 849 F.2d at 118 (noting that the district court "found, as a matter of fact, that [the employer] made no *specific* effort to accommodate [the employee]") (emphasis added).  Likewise here, Aldi did not engage in any interactive process and or even initiate any process towards Plaintiff to provide a "reasonable accommodation" in response to her religious beliefs regarding work on Sunday.[17]

---

[17]

Interestingly, in its reply brief, Aldi argues for the first time that it engaged in an "interactive process" in order to accommodate Bloom's religious beliefs.  (*See* Defendant's Reply at 4-6).  However, Aldi's argument fails to cite to record evidence, instead it relies on argument of counsel, which the Court deems insufficient.

In addition to the reasonableness of the proffered accommodation, the EEOC and Bloom argue that Aldi's offer of a rotation system and shift swap policy still fails to constitute a reasonable accommodation because it failed to eliminate the conflict insofar as Bloom believes that it is a sin to work on Sundays *and* that it is a sin to ask another to work on Sundays.[18] As such, the argument goes, because a shift swap would unequivocally require Bloom to ask another to work on Sunday, which, she contends, violates her religious beliefs, the shift swap fails to eliminate the conflict. On this point, the Court finds the present matter akin to the facts of *Smith v. Pyro Mining Company*, 827

---

[18]

In its reply brief, Aldi asserts that Bloom only raised her belief that it is a sin to ask another to work on Sundays "*for the first time* in an affidavit," which, according to Aldi, directly contradicts her prior deposition testimony and therefore constitutes a sham affidavit under the law of this Circuit. (Defendant's Reply at 2-4) (emphasis in original). However, Aldi isolates one passage of Bloom's deposition testimony, which belies Aldi's argument in that when asked where she draws the line as to "work" besides "going to Aldi and being a cashier," Bloom responded, "I don't buy on Sunday because I do not support other ones working on Sunday." Bloom Deposition at 115:10-14. In the Court's view, said testimony is consistent with her later-in-time Affidavit, in which she stated that "[i]n addition to not working on Sunday because of my religious beliefs, I do not perform acts on Sunday that would require others to work for me." Bloom Affidavit at ¶9. Accordingly, Aldi's argument characterizing Bloom's affidavit as a sham falls flat.

Along the same lines, Aldi next argues in passing (consisting of three sentences) that Bloom never informed it that her beliefs prevented her from seeking swaps and thus Aldi could not have accommodated her for such a conflict. (Defendant's Reply at 3-4). Aldi's argument fails to direct the Court to any evidence such as deposition testimony or an affidavit from an employee of Aldi as to precisely what Bloom told her superiors and the Court declines to scroll through the record to locate the same. At the very least, the Court finds that a genuine issue of material fact exists regarding what transpired during the November 2005 meeting between Bloom and Salandra as to what precisely the former told the latter concerning her religious beliefs. To that end, a jury is best equipped to resolve the same by weighing their respective credibility. *See Morris v. Rumsfeld*, Civil Action No. 1:01-CV-1729, 2007 WL 951450, at *3 (M.D. Pa. March 27, 2007) ("Determining the credibility of witnesses and the weight of the evidence is clearly the jury's responsibility"). Moreover, Plaintiff stated in her affidavit that she informed Salandra in November 2005 about her "religious objections to working on Sundays." Bloom Affidavit at ¶ 11. Drawing all inferences in favor of Plaintiff, as the Court is required to do at this stage, and absent record evidence to the contrary presented by Aldi, the Court infers that "objections" (in the plural) refers to both her belief that it is a sin to work on Sundays and that it is a sin to ask another to work on Sundays.

F.2d 1081 (6th Cir. 1987), *certiorari denied* 485 U.S. 989 (1988), in which the Court addressed the religious accommodation claim of an employee who, similar to the Plaintiff here, believed that "it was morally wrong to work on Sundays in the absence of a life threatening situation" and further believed that "it was wrong for him personally to ask someone to swap with him since he was, in effect, asking that person to sin." *Id.* at 1083, 1084.  In *Smith*, after three unexcused Sunday absences (although the employee notified his supervisor that he would not be reporting to work on each occasion), defendant discharged the plaintiff, leading to his Title VII claim for failure to accommodate his religious beliefs.  Following an one-day bench trial, the district court determined that his employer "made no effort to reasonably accommodate his religious beliefs." *Id.* at 1084. On appeal, Pyro Mining Company argued that its consent to shift swapping along with its "Open Door Policy" satisfied its duty to provide a reasonable accommodation to Smith's religious beliefs. *Id.* at 1086.  While conceding that "one means of accommodating an employee who is unable to work on a particular day due to religious convictions is to allow the employee to trade work shifts with another qualified employee," *id.* at 1088, the Court highlighted the fact that the employee in *Smith* similar to the Plaintiff here "clearly believe[d] that it would be a sin to ask someone to work for him on Sunday," *id.*  Based thereon, the Court found the following:

> We think it clear that if Smith had no religious qualms about asking others to work the Sundays he was scheduled to work, then Pyro's proposed accommodation would have been reasonable.  However, where an employee sincerely believes that working on Sunday is morally wrong and that it is a sin to try to induce another to work in his stead, then an employer's attempt at accommodation that requires the employee to seek his own replacement *is not reasonable*. We therefore agree with the district court that Pyro has not met its obligation under Title VII.

*Smith*, 827 F.2d at 1088 (emphasis added).  In the same manner here, while the Court declines to

hold that an accommodation must eliminate the conflict in order to qualify as reasonable under Title VII, the inquiry as to whether an offered accommodation from an employer eliminates a conflict with the employee's religious beliefs or practices may certainly factor into the reasonableness analysis. *See infra*, note 18. To that end, assuming *arguendo* that Aldi's rotation system and shift swap policy provided a reasonable accommodation for Bloom's religious belief that it is a sin to work on Sundays, which the Court does not concede, the same failed to accommodate her religious belief that it is a sin to ask another to work on Sunday. *See Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1379 (6th Cir. 1994) ("An employer does not fulfill its obligation to reasonably accommodate a religious belief when it is confronted with two religious objections and offers an accommodation which completely ignores one"); *Baker v. Home Depot*, 445 F.3d 541, 547-48 (2d Cir. 2006) (citing *Cooper* and finding that "[i]t follows that the shift change offered to [the employee] was no accommodation at all because, although it would allow him to attend morning church services, it would not permit him to observe his religious requirement to abstain from work *totally* on Sundays") (emphasis in original). Thus, the Court finds that Defendant's offered accommodation was not reasonable to the extent that it failed to address the full extent of Plaintiff's religious beliefs.

Finally, after arguing why its rotation system and voluntary shift swap policy qualifies as a "reasonable accommodation" under Title VII, Aldi next points to cases indicating that an employee has a duty to cooperate with the employer's reasonable accommodation. *See e.g.*, *Shelton*, 223 F.3d at 227 ("By refusing to meet with Human Resources to investigate available positions, [employee] failed to satisfy her duty"). However here, Aldi has placed no facts before the Court indicating that Plaintiff refused any offer of a "reasonable accommodation."

In summary, the Court declines to endorse Aldi's bold assertion that the existence of a neutral

rotation system and shift swap policy, standing alone, is sufficient to constitute a "reasonable accommodation" as a matter of law.  Nonetheless, the Court further declines to foreclose the notion that an existing neutral rotation system and shift swap policy, standing alone, *may* constitute a "reasonable accommodation" under Title VII.  Applied to the case *sub judice*, the Court concludes that Aldi failed to provide a reasonable accommodation for Bloom's religious beliefs insofar as it took action in response to her religious beliefs which conflicted with her employment requirements and the purported accommodation failed to address the full extent of her religious beliefs.

ii.      *Time off on Sundays to attend religious services*

Second, Aldi asserts that it offered Bloom a second reasonable accommodation: scheduling her Sunday work around religious services.  (Defendant's Motion at 6-7).  However, as pointed out by both the EEOC and Bloom, said accommodation falls short of the employer's obligation under Title VII because it fails to "eliminate[] the conflict between employment requirements and religious practices." *Philbrook*, 479 U.S. at 71.[19]  In other words, Aldi's offer of time off on Sunday to attend

---

[19]

Numerous courts have interpreted *Philbrook* as requiring the same, however the Third Circuit has not spoken to this issue.  *See Morrisette-Brown v. Mobile Infirmary Medical Center*, 506 F.3d 1317, 1322 (11th Cir. 2007) (citing *Philbrook* and providing that "the Supreme Court has explained that a reasonable accommodation is one that 'eliminates the conflict between employment requirements and religious practices' ") (citation omitted); *Baker v. Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006); *Cosme v. Henderson*, 287 F.3d 152, 159 (2d Cir. 2002) (reviewing the purported accommodations and providing that "[f]or any of these offers to have been reasonable within the meaning of § 701(j), the proposed accommodation had to have eliminated the conflict between the employment requirement, working on Saturdays, and the employee's religious practice of not working on the Saturday Sabbath"); *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993) (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986) ("A reasonable accommodation of an employee's religion is one that "eliminates the conflict between employment requirements and religious practices ...")); *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1576 (7th Cir. 1996) ("The offered accommodation cannot be considered reasonable, however, because it does not eliminate the conflict between the employment requirement and the religious practice").  *But see Sturgill v. United Parcel Service, Inc.*, 512 F.3d 1024, 1032-33 (8th Cir. Jan. 18, 2008) (declining "to follow the few

church services presupposes that her Title VII claim centers on an inability to practice her religion and/or attend religious services on Sundays. On the contrary, Plaintiff's claim centers on her religious belief that it is sin to work on the Sabbath and to ask another to do the same. Consequently, Aldi's offer of time off on Sundays not only fails to eliminate the conflict, but it fails to even address or recognize the conflict.[20] As such, based on the facts presented, the Court finds that Aldi's offer of time off on Sundays to attend religious services does not constitute a "reasonable accommodation" under Title VII.

3.    *Undue hardship*

As an alternative to its reasonable accommodation argument, Aldi asserts that Bloom's request not to work on Sundays would impose an undue hardship on it because it would (1) impose an unfair impact on Bloom's co-workers or (2) impose more than de minimis financial cost on Aldi.

Section 2000e(j) allows an employer to escape its duty to offer a "reasonable accommodation" by showing that such an accommodation would cause "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). In *Hardison*, the Supreme Court held that employers need not offer accommodations that would result in undue hardship in the form of greater than de minimis costs or negative effects on other employees. 479 U.S. at 85. Here, the Court finds that genuine issues of material fact exist as to whether a reasonable accommodation of

---

decisions in other circuits declaring that a "reasonable" accommodation must eliminate any religion-work conflict" and concluding "that the district court erred in instructing the jury that a reasonable accommodation must eliminate the religious conflict, an instruction that improperly took that issue from the jury").

[20]

While the Court declines to adopt a *per se* rule that an accommodation must eliminate the conflict with the religious practice or belief in order to qualify as reasonable, the Court opines that a court may at least consider the same in reaching its determination as to whether said accommodation is reasonable under Title VII.

Plaintiff's religious beliefs would impose an undue hardship on Aldi as to costs or unfair impact on other employees. The undue hardship determination rests on the " ' particular factual context of each case.' " *Protos v. Volkswagen of America, Inc.*, 797 F.2d 129, 134 (3d Cir. 1986) (quoting *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir. 1981)). In fact, "[t]he *magnitude* as well as the *fact* of hardship must be determined by the examination of the facts of each case." *Id* (emphasis in original).

First, as to costs, the EEOC Guidelines instruct:

> The Commission will determine what constitutes "more than a de minimis cost" with due regard given to the identifiable cost in relation to the size and operating cost of the employer, and the number of individuals who will in fact need a particular accommodation. In general, the Commission interprets this phrase as it was used in the *Hardison* decision to mean that costs similar to the regular payment of premium wages of substitutes, which was at issue in *Hardison*, would constitute undue hardship. However, the Commission will presume that the infrequent payment of premium wages for a substitute or the payment of premium wages while a more permanent accommodation is being sought are costs which an employer can be required to bear as a means of providing a reasonable accommodation. Further, the Commission will presume that generally, the payment of administrative costs necessary for providing the accommodation will not constitute more than a de minimis cost. Administrative costs, for example, include those costs involved in rearranging schedules and recording substitutions for payroll purposes.

29 C.F.R. § 1605.2(e)(1). Here, Aldi argues that providing an accommodation to Bloom would have required it to use other cashiers to cover her Sunday hours and, therefore, the additional hours (1) "would likely have resulted in overtime pay"; (2) "might have caused" a casual cashier to move from casual status to part time status, resulting in fringe benefits; or (3) "would likely have resulted" in less productivity. (Defendant's motion at 10). The EEOC Guidelines refer to the "identifiable cost" yet Aldi only speaks in hypothetical generalizations. The Court finds that the above alleged costs

are entirely speculative, i.e., "would likely have resulted" and "might have caused," and, as such, Defendant has failed to carry its burden to establish undue hardship as to cost. *See Pyro*, 827 F.2d at 1085-86 ("In addition, we are somewhat skeptical of hypothetical hardships that an employer thinks might be caused by an accommodation that never has been put into practice. ... An employer must still, however, present evidence of undue hardship; it cannot rely merely on speculation") (citations omitted); *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1492 (10th Cir. 1989) (requiring any proffered hardship to be "actual" not speculative); *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir.), *cert. denied*, 454 U.S. 1098 (1981) ("A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of 'actual imposition on co-workers or disruption of the work routine' ") (quoting *Burns v. Southern Pac. Transp. Co.*, 589 F.2d 403, 406-07 (9th Cir. 1978)); *E.E.O.C. v. Alamo Rent-A-Car LLC*, 432 F.Supp.2d 1006, 1014 (D.Ariz. 2006) (citations omitted); *Gordon v. MCI Telecommunications Corp.*, 791 F.Supp. 431, 436 (S.D.N.Y. 1992) ("An employer must present evidence of actual undue hardship and may not rely on speculation or 'hypothetical hardship' ") (citations omitted).

Furthermore, the EEOC Guidelines instruct that the de minimis cost analysis must be undertaken "with due regard given to the identifiable cost in relation to the size and operating cost of the employer ... ." 29 C.F.R. § 1605.2(e)(1). Not only has Aldi failed to establish any "identifiable cost," but it has also failed to examine any such costs in relation to the size and operating costs of its business--a large, international grocery retailer.[21] (*See* Complaint, at ¶ 5).

Second, as to unfair impact on other employees, while Aldi correctly recites the law under

---

[21]

According to its website, Aldi operates 850 stores in 27 states. (*See* http://aldifoods.com).

*Hardison* and *Aron v. Quest Diagnostics Inc.*, 174 Fed. Appx. 82 (3d Cir. 2006)[22], the Court finds that said cases do not command a finding of undue hardship. First, in *Hardison*, when discussing "unequal treatment" of other employees resulting from depriving another employee of his or her shift preference, the Supreme Court noted that "[t]here were no volunteers to relieve Hardison on Saturdays ... ." *Hardison*, 432 U.S. at 81. On the contrary here, Plaintiff points to the deposition testimony of Ronnie Sue Ritz, who testified that "she wanted more hours." (Deposition of Ronnie Sue Ritz at 12:12). Furthermore, the Supreme Court found that an accommodation in *Hardison* would have deprived employees of contractual rights under a collective bargaining agreement, which is not the case here. Second, *Aron* is a "not precedential" opinion, a fact Aldi failed to point out to the Court, and thus, was not intended to bind a district court but rather merely to resolve the dispute between the parties in that case. *See In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006) ("Under this court's Internal Operating Procedures ("IOPs"), [Not precedential opinions] 'are not regarded as precedents that bind the court because they do not circulate to the full court before filing.' 3d Cir. I.O.P. 5.7 (July 1, 2002). *A fortiori*, they are not precedents for the district courts of this circuit"). As such, the Court is not bound by *Aron*.

Accordingly, the Court finds that the Defendant has failed to establish that a "reasonable accommodation" would have resulted in an undue hardship on its business.

B.      **Retaliation under Title VII**

In her Amended Complaint in Intervention, Bloom asserts religious discrimination resulting in her wrongful termination as well as retaliation by Aldi in violation of Title VII and PHRA.

---

[22]

Aldi also notes *United States v. Board of Education for the School Dist. of Philadelphia*, 911 F.2d 882 (3d Cir. 1990), however, the passage cited merely restates the standard under *Hardison*.

Because Title VII and the PHRA are interpreted under the same standards, the Court will consider Plaintiff's claims for retaliation under both statutes together. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

As an initial matter, the Court notes that Defendant's motion separately addresses claims by Bloom for wrongful termination based on her religion and retaliation both in violation of Title VII and the PHRA, *see* Docket No. 39, at 13-18, as if Plaintiff pled two separate claims in her Amended Complaint in Intervention. However, the Court reads Plaintiff-Intervenor's Amended Complaint as only pleading a claim for retaliation. Further, Plaintiff-Intervenor's brief in opposition only responds to retaliation, *see* Docket No. 53, at 25-30, which endorses the Court's reading. Accordingly, the Court will consider Bloom's claim for retaliation.[23]

To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment against her; and (3) there was a causal connection between her participation in the protected activity, and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) (alterations in original). In its motion, Defendant Aldi does not specifically challenge any of these elements and hence, the Court will presume (for the purposes of the instant motion only) that Defendant concedes the *prima facie* case as to retaliation under Title VII and the PHRA. Rather, Defendant appears to proceed to the next stage of the analysis, i.e., legitimate, non-discriminatory reason for Plaintiff's termination, and thus, the Court will follow Defendant's lead.

Once the employee establishes a *prima facie* case as to retaliation, the analysis follows the

---

[23]

Regardless, to the extent that Bloom has pled separate and distinct claims, per Aldi's brief, the same standards and analyses apply to a wrongful termination claim and a retaliation claim.

familiar *McDonnell Douglas* framework[24] and the burden shifts to the employer to advance "a legitimate non-retaliatory reason" for its adverse action. *Nagle v. RMA, The Risk Management Ass'n*, 513 F.Supp.2d 383, 390 (E.D. Pa. 2007) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). "This burden is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision.' " *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citing *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994)). If the employer satisfies its burden in the second step, the plaintiff must convince the fact finder "that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (citing *Krouse*, 126 F.3d at 501). Nevertheless, the burden of proof remains with the Plaintiff. *Moore*, 416 F.3d at 342.

Here, as to the employer's legitimate, non-discriminatory reason, Aldi plainly asserts that Plaintiff's termination "resulted from refusal to work on two Sundays as scheduled, which constituted a failure to perform the essential functions of her job and a violation of the Attendance and Punctuality policy." (Docket No. 39, at 17). The Court finds that Aldi's proffered legitimate, non-retaliatory reason for her termination meets the "relatively light" burden required at this stage of the burden-shifting analysis, and thus, the Court will proceed to the third stage--pretext.[25]

---

[24] As a reminder, the *McDonnell Douglas* framework proceeds as follows: (1) plaintiff must establish a *prima facie* case; (2) defendant must then offer a legitimate nondiscriminatory reason for the employment decision in question; and (3) plaintiff may then demonstrate that the stated reason is merely a pretext for illegal discrimination. *McDonnell Douglas Corp.,* 411 U.S. 792, 802-803 (1973).

[25] The Court notes that Plaintiff does not challenge whether Aldi met its burden at the second step, but instead Plaintiff only responds to Aldi's proffered reason for termination to the extent that

In response to Defendant's purported legitimate, non-discriminatory reason for her termination, Plaintiff must respond by citing evidence that the rationale is pretextual. *Fuentes*, 32 F.3d at 763. In order to do so, Plaintiff must point to specific record evidence from which a reasonable factfinder could (1) disbelieve Defendant's articulated non-discriminatory, non-retaliatory reason for termination; or (2) otherwise believe that an invidious retaliatory reason (i.e., religious animus and/or retaliatory motive) was more likely than not a motivating or determinative cause of Aldi's termination of Plaintiff's employment. *See Schwartzberg v. Mellon Bank, N.A.*, No. 02:06cv1006, 2008 WL 111984, at *10 (W.D. Pa. Jan. 8, 2008) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)); *see also Tomasso*, 445 F.3d at 706 (citing *Fuentes*, 32 F.3d at 764) ("In order to create a genuine issue of material fact as to whether the proffered reasons are pretextual, [Plaintiff] must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action' "). However, "pretext is not shown by evidence that 'the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.' " *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (quoting *Fuentes*, 32 F.3d at 765). Instead, a plaintiff must "present evidence contradicting the *core facts* put forward by the employer as the legitimate reason for its decision." *Kautz*, 412 F.3d at 467 (interpreting "principles in *Fuentes*"). In other words, observing the oft-quoted standard from *Fuentes*, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

_____

she asserts that the same is pretextual.

legitimate reasons for its action that a reasonable fact-finder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (internal quotations omitted) (internal and end citations omitted) (emphasis and alteration in original). Attempting to shoulder her burden, Bloom seeks to demonstrate pretext in two ways, specifically by: (1) pointing out alleged inconsistencies in Defendant's position as to why it terminated Plaintiff's employment; and (2) relying on circumstantial evidence that Defendant's employees were "annoyed" by Plaintiff's request for a religious accommodation. (Defendant's Motion at 25-30).[26]

The Court finds that genuine issues of material fact exist as to the telephone conversations between Bloom and Aldi employees on January 21, 2006 and February 4, 2006 and whether she properly called off or reported off from work, (*see* Docket No. 49, at ¶¶ 89-91, 106-111),[27] which directly refutes Aldi's stated reason for Bloom's termination, i.e., failure to perform the essential functions of her job and violation of the Aldi's Attendance and Punctuality Policy, (*see* Docket No. 40, at ¶ 91). The Court finds significant the substance of said conversations and the understanding of both parties flowing from the same. Further, as to her alleged January 22, 2006 unexcused absence, Plaintiff has presented additional evidence that in addition to calling off on January 21, 2006, on January 20, 2006, she also reported off from work by personally informing Christy Shimko, her shift manager. In the same way, as to her alleged February 5, 2006 unexcused absence, Plaintiff

---

[26]

Plaintiff EEOC does not address retaliation.

[27]

As to her alleged January 22, 2006 unexcused absence, Plaintiff has presented evidence that in addition to calling off on January 21, 2006, on January 20, 2006, she also reported off from work by personally informing Christy Shimko, her shift manager. (Docket No. 49, at ¶88).

has also presented evidence that Aldi, in fact, noted and recorded that Bloom "called off" for February 5, 2006, (*see* Docket No. 51, Exh. 20), which Aldi disputes by way of subsequent, contradictory testimony, in which the employee, who hand wrote that Bloom "called off," now asserts that she did not call off,  (*see* Deposition of Pamela Conn at 47:17-48:19).  Therefore, as these issues hinge on testimony of the parties involved (including, but not limited to, Bloom, Cooper, Shimko, and Conn), the Court finds that summary judgment is not appropriate.

## C.     Punitive damages under Title VII[28]

Defendant asserts that the Court should dismiss Plaintiff's demand for punitive damages because there is no evidence that Aldi acted with "reckless indifference" to Plaintiff's rights.  In particular, Defendant highlights its set of comprehensive policies against discrimination and harassment as well as its training policies and procedures.  In response, Plaintiff accuses Aldi and employees of Aldi of responding to her request for a religious accommodation with "initial indifference" and "scorn."  (Docket No. 53 at 31-36).  Bloom concedes that "[w]hile Defendant arguably had an anti-discrimination policy, it did not train its employees about this policy, and clearly did not teach its employees to take discrimination laws seriously."  (Docket No. 53 at 33).

Since the passage of the Civil Rights Act of 1991, punitive damages have been available (subject to caps) in cases arising under Title VII (among other statutes) against private employers:

> A complaining party may recover punitive damages under this section

---

[28]

The Court notes that punitive damages are not available under the PHRA.  *See Hoy v. Angelone*, 720 A.2d 745, 751 (Pa. 1998) ("In the absence of express statutory language or any further legislative guidance, we hold that punitive damages are not available under the [PHRA]"); *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 570 n. 3 (3d Cir. 2002) ("[P]unitive damages are not available under the PHRA").  Accordingly, the Court will only consider Plaintiff's demand for punitive damages under Title VII.

> against a respondent (other than a government, government agency or
> political subdivision) if the complaining party demonstrates that the
> respondent engaged in a discriminatory practice or discriminatory
> practices with malice or with reckless indifference to the federally
> protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1). In *Kolstad v. American Dental Association*, 527 U.S. 526 (1999), the Supreme Court "consider[ed] the circumstances under which punitive damages may be awarded in an action under Title VII." *Id.* at 529. There, a female employee brought an action under Title VII for gender discrimination challenging the employer's decision to promote another individual (a male) over her. At trial, the district court declined the employee's request to instruct the jury on punitive damages, which the appellate court reversed (in a split decision), rejecting the employer's claim that punitive damages are available under Title VII only in " 'extraordinarily-egregious cases.' " *Id.* at 532 (citing 108 F.3d 1431, 1437 (1997). Upon rehearing *en banc*, the appellate court affirmed the district court, determining that a defendant must be shown to have engaged in some egregious misconduct before the jury may consider a punitive damages request. 139 F.3d 958, 965 (1998).

A majority of the Supreme Court disagreed, "conclud[ing] that the employer's conduct need not be independently 'egregious' to satisfy § 1981a's requirements for a punitive damages award, although evidence of egregious misconduct may be used to meet the plaintiff's burden of proof." *Id.* at 546. The Court held that Congress established a "two-tiered structure" for compensatory and punitive damages stemming from section 1981a, with a higher standard required for the latter:

> The very structure of § 1981a suggests a congressional intent to
> authorize punitive awards in only a subset of cases involving
> intentional discrimination. Section 1981a(a)(1) limits compensatory
> and punitive awards to instances of intentional discrimination, while
> § 1981a(b)(1) requires plaintiffs to make an additional
> "demonstrat[ion]" of their eligibility for punitive damages. Congress
> plainly sought to impose two standards of liability-one for
> establishing a right to compensatory damages and another, higher

standard that a plaintiff must satisfy to qualify for a punitive award.

*Id.* at 534 ( alteration in original).  Moreover, and of particular relevance here, the Court found that the "terms 'malice' and 'reckless' ultimately focus on the actor's state of mind," *id.* at 535, "pertain[ing] to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination," *id.*

As to Defendant's assertion of the so-called *Kolstad* defense,[29] the Court finds that Aldi has fallen short of establishing its "good faith" effort to comply with Title VII, especially considering the apparent lack of (or, at best, minimal) training given to its employees regarding religious discrimination under Title VII.  *See* Cooper Deposition 125:6-21; Deposition of Pamela Conn (shift manager) at 44:12-45:10; Deposition of Christy Shimko (shift supervisor) at 33:5-34:11.  Further, absent generalized statements regarding training and policies, Aldi has failed to demonstrate any good faith attempts to actively enforce its alleged compliance with Title VII programs and policies. *See Zimmerman v. Associates First Capital Corp.*, 251 F.2d 376 (2d Cir. 2001) ("This defense requires an employer to establish *both* that it had an antidiscrimination policy and made good effort to enforce it") (emphasis added); *Rush v. Speedway Buick Pontiac GMC, Inc.*, 525 F.Supp.2d 1265, 1280 (D. Kan. 2007) (citing *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1138 (10th Cir.

---

[29]

A number of courts have interpreted the good faith defense espoused in *Kolstad* as an affirmative defense, thus placing the burden on the employer.  *See Zimmermann v. Assoc. First Capital Corp.*, 251 F.3d 376, 385 (2d Cir. 2001); *Romano v. U-Haul, Int'l*, 233 F.3d 655, 670 (1st Cir. 2000); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 516 (9th Cir. 2000); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 (5th Cir. 1999).  *See also Ferguson v. Associated Wholesale Grocers, Inc.*, 469 F.Supp.2d 961, 972 (D.Kan. 2007) (predicting that the Tenth Circuit would also find that the employer bears the burden to establish the good faith defense).  Even so, the burden of proof to establish punitive damages remains with the plaintiff-employee.  *See Kolstad*, 527 U.S. at 546 (providing that "evidence of egregious misconduct may be used to meet the plaintiff's burden of proof").

2006); *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1210 (10th Cir. 2000) ("In order for an employer to avail itself of *Kolstad's* good-faith-compliance standard, an employer must at least (1) adopt antidiscrimination policies, (2) make a good faith effort to educate its employees about these policies and the statutory prohibitions, and (3) make good faith efforts to enforce antidiscrimination policies").

In summary, the Court finds that Plaintiff has presented enough evidence to suggest to a reasonable factfinder that Aldi (or its employees) acted with malice or with reckless indifference to her aggrieved rights.[30]

## CONCLUSION

Accordingly, based on th e foregoing, Aldi's Motion for Summary Judgment [38] is denied in all respects.  An appropriate order to follow.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   March 28, 2008.

cc/ecf:  All counsel of record.

---

[30]

At the very least, because the Court does not know what evidence and, more importantly, testimony will be disclosed at trial regarding Defendant's actions towards Plaintiff's rights, and considering the subjective nature of the analysis hinging "on the actor's state of mind," *Kolstad*, 527 U.S. at 535, the Court feels that this issue is best left until the close of all evidence at trial at which time the Court may revisit the issue, if Defendant wishes.  Further, one court within this Circuit has concluded that, without any need for further discussion, a plaintiff's claim for punitive damages survives with a discrimination claim.  *See Harry v. City of Philadelphia*, No. Civ.A 03-661,  2004 WL 1387319, at *16 n.24 (E.D. Pa. June 18, 2004) ("Since plaintiff's claim for racial discrimination under Title VII will survive this motion for summary judgment, so too will his claim for punitive damages based on such violation").